

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

No. 08-25-00221-CV

Rida Asfahani and Root Architects, PC, Appellants

v.

180 Partners, LLC and Melissa's Gym, Inc., Appellees

On Appeal from the 384th District Court
El Paso County, Texas
Trial Court No. 2017DCV1231

## MEMORANDUM OPINION

This interlocutory appeal challenges an order denying a motion to dismiss under § 150.002 of the Texas Civil Practice and Remedies Code, which governs suits against architects, engineers, surveyors, and landscape architects. Tex. Civ. Prac. & Rem. Code §§ 150.002(a), (b); *Levinson Alcoser Assocs, L.P. v. El Pistolon II, Ltd*., 513 S.W.3d 487, 489 (Tex. 2017). Section 150.002 requires a plaintiff to file a sworn "certificate of merit" with any complaint "arising out of the provision of professional services by a licensed or registered professional" named in the statute. *Id*. § 150.002(a); *Levinson*, 513 S.W.3d at 489.

Appellees 180 Partners, LLC and Melissa's Gym, Inc. filed a certificate of merit from a professional architect to their complaints against Appellants Rida Asfahani and Root Architects, PC. Appellants sought dismissal under § 150.002, which the trial court denied. Because we conclude the certificate of merit complied with § 150.002's requirements, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This dispute arises from the allegedly defective design and construction of Appellees' gymnastics gym, Melissa's Gym, in El Paso, Texas. Appellees hired Appellants Asfahani, the architect, and Root Architects, his architectural firm, for the project. Asfahani signed a "Proposal for Architectural Services" (the Proposal) as "Principal – Root Architects" for the design of the gym and oversight of its construction. After what Appellees describe as "nearly every aspect of the Gym [being] defectively designed and constructed," they sued "Rida Asfahani d/b/a Root Architects" in 2017 and attached an affidavit from architect Jefferey J. Huff to their petition. Appellees later joined Root Architects, PC to the suit in 2018 and attached the same affidavit from Huff.

On November 15, 2024, Appellants filed "Defendant Rida Asfahani and Root Architects, PC's No-Evidence and Traditional Motion for Summary Judgment," seeking dismissal under § 150.002 of the Texas Civil Practice and Remedies Code. They argued that Appellees failed to file a complying certificate of merit because Huff's affidavit did not address "each pleaded theory against Asfahani" and did not address any alleged "negligence, if any, or other action, error, or omission of the *licensed or registered professional* in providing the professional service . . . and the factual basis for each such claim" against Root Architects. After a hearing, the trial court denied Appellants' "Traditional Motion for Summary Judgment on Plaintiff 180 Partners, LLC's and Melissa's Gym, Inc.'s claims pursuant to Section 150.002 of the Texas Civil Practice and

2

Remedies Code." This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 150.002(f).

Appellees then moved to dismiss the appeal on the basis that this Court lacks jurisdiction over an interlocutory appeal from a trial court's summary judgment ruling. However, in their summary judgment motion, Appellants sought dismissal of the underlying lawsuit under § 150.002(e) of the Texas Civil Practice and Remedies Code. Notwithstanding the title of the motion, Appellants effectively moved for dismissal of the underlying lawsuit under § 150.002. We conclude that the trial court's order denying dismissal relief under § 150.002 is subject to an interlocutory appeal and that we have jurisdiction over this appeal. *See* Tex. Civ. Prac. & Rem. Code § 150.002(f) ("An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order."); *Surgitek, Bristol-Meyers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (providing that whether an order grants or denies a motion to dismiss depends on the relief sought by the movant, and courts "should not be so constrained by the form or caption of a pleading.").

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review the denial of a motion to dismiss under § 150.002 for abuse of discretion. *Atwell, LLC v. DCP Operating Co.*, No. 08-23-00029-CV, 2024 WL 308533, at *2 (Tex. App.—El Paso Jan. 26, 2024, no pet.) (mem. op.). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles." *Dalmex, Ltd. v. Apparel Enters., Inc.*, 455 S.W.3d 241, 243 (Tex. App.—El Paso, 2015 no pet.) (quoting *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011)).

"If, as here, resolution of the issue requires us to construe statutory language, we employ a de novo standard of review." *Bruington Eng'g v. Pedernal Energy L.L.C.*, 403 S.W.3d 523, 526 (Tex. App.—San Antonio 2013, no pet.) (citing *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d

3

433, 437 (Tex. 2009)). Our goal in construing a statute is "to determine and give effect to the Legislature's intent." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). In doing so, "we construe the Legislature's chosen words and phrases within the context and framework of the statute as a whole, not in isolation." *In re Texas Educ. Agency*, 619 S.W.3d 679, 687 (Tex. 2021) (orig. proceeding). "We apply the plain meaning of statutory language unless (1) the Legislature has prescribed definitions, (2) the words have acquired a technical or particular meaning, (3) a contrary intention is apparent from the context, or (4) a plain-meaning construction leads to nonsensical or absurd results." *Id.* "Once we determine the statute's proper construction under a de novo standard, we then determine if the trial court abused its discretion in applying the statute." *Atwell*, 2024 WL 308533, at *2.

> The certificate of merit must:
>
> set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.

Tex. Civ. Prac. & Rem. Code § 150.002(b). But a certificate of merit "need not recite the applicable standard of care and how it was allegedly violated in order to provide an adequate factual basis for the identification of professional errors." *CBM Eng'rs, Inc. v. Tellepsen Builders, L.P.*, 403 S.W.3d 339, 345 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "The certificate-of-merit requirement is a substantive hurdle that helps ensure frivolous claims are expeditiously discharged." *LaLonde v. Gosnell*, 593 S.W.3d 212, 216 (Tex. 2019). "[F]ailure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant," and such "dismissal may be with prejudice." Tex. Civ. Prac. & Rem. Code § 150.002(e).

## III. ANALYSIS

In their sole issue on appeal, Appellants contend the trial court erred in denying dismissal mandated by § 150.002. They advance two arguments in support: first, the certificate of merit does not comply with § 150.002 because it fails to address each pleaded theory against Asfahani; and second, the certificate of merit does not comply with § 150.002 because Appellees used the same certificate of merit for their claims against both Asfahani and Root Architects, which was not specific to Root Architects.[1] We address each argument in turn.

### A. Certificate of merit need only address professional errors or omissions, not factual basis for every pleaded claim.

Appellants first contend that the certificate of merit fails to comply with the requirements of § 150.002 because "Huff's affidavit identifies no contract with [Asfahani], no contractual duty or term [] Asfahani purportedly breached, no contract-specific conduct giving rise to damages" and the certificate of merit "is framed entirely in generalized negligence language." According to Appellants, "Section 150.002(b) requires the affidavit to address *each* theory of recovery demonstrating the alleged negligence errors, omission, or actions" and the certificate of merit "completely fails to set forth specifically the 'negligence, if any, or other action, error, or omission' for 'each theory of recovery'" (emphasis in original).

The Texas Supreme Court has expressly rejected Appellants' interpretation of § 150.002. In *Melden*, Melden similarly "interpret[ed] the factual-basis requirement as modifying 'each theory of recovery' such that the requirement applies to the elements of each cause of action pled." *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 893 (Tex. 2017). Rejecting this interpretation of the statute, the Court explained:

---

[1] While Appellants present two separate points of appeal, we construe them as two arguments in support of a single, overarching issue and reorganize them as such.

Rather than simply clarifying the statute's application to any action arising out of the provision of professional services, regardless of the legal theory, Melden interprets the new language—*for each theory of recovery for which damages are sought*—as expanding the factual-basis requirement to include the various elements of each underlying theory alleged by the plaintiff. We, however, do not interpret the 2009 amendment as enlarging the factual-basis requirement or otherwise changing its existing relationship within the statute (emphasis in original).

. . .

We accordingly reject Melden's interpretation of the statute, which would require the expert's affidavit to address the elements of the plaintiff's various theories or causes of action. *The statute instead obligates the plaintiff to get an affidavit from a third-party expert attesting to the defendant's professional errors or omissions and their factual basis.*

*Id*. at 895–96 (emphasis added). The Court relied on the Third Court of Appeals' decision in *M-E Eng'rs, Inc. v. City of Temple*, 365 S.W.3d 497 (Tex. App.—Austin 2012, pet. denied). *Id*.

In *M-E Engineers*, appellants construed the provision in § 150.002 "stating that the certificate must 'set forth specifically for each theory of recovery for which damages are sought'. . . together with the subsequent references to 'factual basis' of 'each such claim,'" to require the certificate to set forth facts satisfying "each element of any legal theory or claim on which the plaintiff intends to rely—including each element" of the claims asserted against them. *Id*. at 505. The court rejected this interpretation and explained that "[r]ead as a whole, section 150.002, subsection (b), reveals a core focus on ascertaining and verifying the existence of errors or omissions in the professional services provided by a 'licensed or registered professional.'" *Id*. at 506. It concluded:

[W]e find nothing in chapter 150 that would require that a certificate address operative facts other than the professional errors or omissions that are the focus of the statute. Properly construed, subsection (b) requires no more, and subsection (a)'s witness-qualification requirements are consistent with this focus. We cannot conclude that the Legislature intended to require affiants with expertise in such fields as engineering or architecture to opine regarding such far-afield subjects as contract construction or agency.

*Id*. at 506–07 (internal citations omitted).

Here, Appellees' live petition alleges that Asfahani and Root Architects committed a series of errors and omissions in designing and supervising the construction of Melissa's Gym.[2] It specifically alleges that "[a]t all times, Rida Asfahani/Root Architects, PC was the Project Architect"; "Mr. Asfahani . . . owns Root Construction" and "is not only an Architect, but also a licensed general contractor"; "a proposal for architectural services was signed by Plaintiffs on December 23, 2015, with Mr. Asfahani who did not disclose his entity was a P.C."; the "plans and specifications made express representations regarding the standard, quality, grade of the material, equipment, systems, and components to be installed at the Project"; "the as-built Project is replete with products, materials, equipment and systems that are of a lesser quality and grade than represented in the plans and specifications"; and "the design and construction documents for the Project prepared by Mr. Asfahani had numerous and serious flaws which were never disclosed to the Plaintiffs. These defects and flaws were later identified by Jeffery Huff, Architect, in his report, and other experts Plaintiffs were forced to hire."

In his affidavit, Huff attested that he is a registered architect in Texas, actively engages in the practice of architecture, holds the same registration as Asfahani, and is knowledgeable in Asfahani's area of practice.[3] He stated he inspected Melissa's Gym on five occasions, "reviewed the Proposal for Architectural Services prepared by Mr. Asfahani d/b/a Root Architects for Melissa's Gym," plans prepared by Asfahani, inspection reports, engineering reports, repair

---

[2] "In deciding a motion to dismiss under chapter 150, we consider the live pleadings at the time of the hearing on the motion to dismiss." *M-E Eng'rs*, 365 S.W.3d at *507 n.3 (citing *Alvarado v. Oklahoma Sur. Co.*, 281 S.W.3d 38, 40 (Tex. App.—El Paso 2005, no pet.); *Martinez v. Battelle Mem'l Inst.*, 41 S.W.3d 685, 687 n.1 (Tex. App.—Amarillo 2001, no pet.)).

[3] "Resolving a certificate-of-merit dispute generally requires courts to consider two threshold questions: (1) whether the defendant is a licensed or registered professional; and (2) whether the damages sought arise out of the provision of these professional services by the defendant." *Atwell, LLC v. DCP Operating Co.*, No. 08-23-00029-CV, 2024 WL 308533, at *4 (Tex. App.—El Paso Jan. 26, 2024, no pet.). We note that Appellants do not challenge these threshold matters on appeal.

proposals, and correspondence between Appellees and Asfahani. Huff also attested to multiple errors and omissions by "Asfahani d/b/a/ Root Architects," regarding the design and plan of Melissa's Gym under the Proposal. Below are the obligations of Asfahani and Root Architects as stated in the Proposal (in bold), followed by Huff's statements regarding their errors and omissions (in italics).

**Schematic Design:**
**Root Architects will coordinate the project as described by the Owner. Owner to coordinate alternate design requests during this phase. Alternates made after schematic design are subject to additional fees, depending on the size and scope of the alteration.**

**Based on mutually agreed upon requirements, Root Architects will prepare, for approval by the Owner, Schematic Design Documents consisting of drawings illustrating the scale and relationship of project components.**

- *[D]esignated Wall Types are confusing. Wall Type A is utilized for both typical and 1 Hr. rated walls, There is insufficient information in the drawing set to adequately bid, construct and evaluate for life safety compliance, interior wall assemblies.*

- *Regarding the Door Schedule and Window Schedule. No specifications are provided. Fire rated doors are not designated. There is insufficient information in the drawing set to adequately bid, construct and evaluate for life safety compliance, doors and windows.*

**Design Development:**
**Based on the approved Schematic Design Documents and any adjustments authorized by the Owner in the program, schedule or construction budget, Root Architects shall prepare, for approval by the Owner, Design Development Documents consisting of drawings and other documents to fix and desaibe the size and character of the Project as to architectural, mechanical and electrical systems, materials and such other elements as may be appropriate.**

- *Regarding the Mechanical Drawings – the evaporative cooling system specified on the mechanical drawings is inadequate to provide the necessary level of comfort for the intended building use. In the course of customary coordination between the project architect and the consulting mechanical, electrical and plumbing engineers, inadequate direction and oversight was demonstrated in selection of the cooling system. The cooling system is not big enough and with the inadequate insulation it represents a huge flaw in this building. The 2 non-*

*commercial grade evaporative coolers installed will not adequately cool this building.*

- *This is a violation of professional conduct, Appendix Provision A, B and D, and constitute[s] negligence and deceptive conduct.*

## Contract Documents
**Based on the approved Design Documents and further adjustments in the scope or quality of the project, Root Architects will prepare Construction Documents consisting of architectural drawings setting forth in detail the requirements for the construction of the above referenced projects.**

- *Construction Documents–The Project Architect, Rida Asfahani, failed to act with reasonable care and competence in the design and documentation of the Melissa's Gym facility as measured by generally accepted architectural standards or procedures. The construction drawings display an alarming lack of attention to detail and specificity. The construction drawings specify a woefully insufficient mechanical system to adequately provide a safe and comfortable environment for the intended occupants. Additionally, the construction drawings are contradictory and confusing. These drawings, as provided to contractors for the purposes of bidding and construction, were inadequate to convey design intent, material selections and construction methodology.*

## Contract Administration
**Contract Administration will include periodic observation of construction (according to project schedule provided by the owner and contractor), checking of project shop drawings, and reviewing of Contractors application for payment as required. Daily supervision and/or construction administration is not included in this contract.**

- *Construction Observation – The inspections I have made and the information I have reviewed evidence that the Project Architect, Rida Asfahani, did not adequately perform the necessary construction observation responsibilities as described in Appendix Provisions F – (1, 2, 3A, 3B, 3C, 4). As a result many defects exist in this building. His conduct is both deceptive and negligent.*

- *Construction Observation – During the construction process, the Project Architect, Rida Asfahani, had the responsibility and opportunity to observe [and] evaluate the facility as it was being constructed as compared to the documented design. As construction defects and deficiencies occurred, the Project Architect did not demonstrate a reasonable effort to identify defects and deficiencies. Upon discovering the structural framing did not include elements to resist lateral forces, the Project Architect was required to halt construction until this question was resolved.*

9

Huff ultimately concluded his affidavit by opining that Asfahani "failed in numerous instances in the execution of his professional responsibilities, resulting in harm to his client, the owners of Melissa's Gym. This conduct was negligent. In other instances as described herein the conduct was deceptive and deceived the owner as to what it was actually getting in having this building designed and built."

Based on these alleged errors and omissions, Appellees sought damages against "Asfahani d/b/a Root Architects" for negligence, violations of the Deceptive Trade Practices Act, breach of contract, breach of implied warranty of good and workmanlike performance, defamation, fraud, and conspiracy. Predicated on these same alleged errors and omissions, Appellees brought the same claims against Root Architects through theories of agency, vicarious liability, and joint and several liability of Asfahani and Root Architects. These claims are based on the alleged errors and omissions of Asfahani and Root Architects in providing professional services, and Huff sufficiently identified the existence of those alleged professional errors and omissions under the theories on which Appellees rely upon to seek damages. *See M-E Eng'rs*, 365 S.W.3d at 506. On Appellees' pleadings, we conclude that Huff's certificate of merit satisfies § 150.002 with respect to Appellees' theories of recovery against both Asfahani and Root Architects.

### B. Certificate of merit was not required to contain express reference to Root Architects.

Appellants also contend that the trial court erred in denying dismissal because "instead of filing a certificate of merit setting forth specifically the negligence, if any, or other action, error, or omission of Root Architects . . . Appellees re-attached the *same* June 30, 2017 Huff affidavit which Appellees prepared nine months earlier for claims against Asfahani, which is completely silent as to Root Architects" (internal quotation marks omitted). Appellees filed claims against Root Architects in their fifth amended petition. They attached Huff's affidavit to that petition.

According to Appellants, Huff's affidavit is insufficient under § 150.002 because it "only discusses Asfahani in his individual capacity and contains just a single incidental reference to 'd/b/a Root Architects,' without articulating any 'negligence, if any, or other action, error, or omission' or the factual basis to support the allegations" specific to Root Architects.

Our sister court in Austin has already addressed this issue; it held that a certificate of merit need not expressly refer to every defendant or provide a factual basis for every claim. *M-E Eng'rs*, 365 S.W.3d at 505–06. In *M-E Engineers*, litigation arose from a construction project in which M-E Engineers, Inc. and Tochihara—a licensed engineer and the principal of M-E Engineers, Inc.—were hired. *Id*. at 499. After suit was filed against them, they sought dismissal under § 150.002 "on the basis that [the] certificate of merit explicitly mentions only Tochihara and not M-E." *Id*. The Third Court of Appeals rejected that argument and held that the certificate of merit—which did not mention M-E Engineers at all—satisfied § 150.002 with respect to the claims against M-E Engineers. *Id*. at 507. The court explained that the pleadings alleged that Tochihara committed certain errors and omissions in design and supervision and, based on those same alleged errors and omissions, sought damages against M-E Engineers as well. *Id*. The same is true here.

Appellants argue the certificate of merit needed to specifically reference Root Architects because it is a "not only a professional corporation, but is also a firm in which Asfahani practiced architecture in 2017" and Root Architects "submitted architectural plans to the City of El Paso which the City of El Paso approved, as well as submitted revised plans" in the underlying matter. Appellees respond that all of the allegations against Asfahani and Root Architects are "predicated on the same conduct" and are allegations against "Asfahani d/b/a Root Architects." We agree.

Appellees sued Asfahani, the architect, and Root Architects, his architectural firm; Asfahani is the principal of Root Architects. Asfahani signed the Proposal as "Principal – Root

11

Architects." Unlike the certificate of merit in *M-E Engineers*, which did not mention M-E Engineers at all, the certificate here does reference Root Architects. Huff attested that he "reviewed the Proposal for Architectural Services prepared by Mr. Asfahani d/b/a Root Architects for Melissa's Gym." In the petition in which Root Architects was joined, Appellees alleged the following conduct of Asfahani and Root Architects:

> Upon finding a suitable piece of commercial property on the West side of El Paso, Texas a proposal for architectural services was signed with Rida Asfahani d/b/a Roo[t] Architects. Mr. Asfahani did not disclose his entity was a P.C. He was to and did prepare certain design and construction documents for the building to be built on the chosen property.
>
> .   .   .
>
> Mr. Asfahani d/b/a Roo[t] Architects and Mr. Ricardo Fierro-Stevens of Iron Square Foot office together with Mostafa Rifai d/b/a Ocotillo Collaborative at 810 Texas in El Paso, Texas.
>
> .   .   .
>
> Mr. Asfahani had represented to the Whites that the building would be completed by March 2016. They knew that Melissa's Gym was going to have to pay holdover rent amounts for the space until the new building was done. Iron Square Foot later represented the building would be complete in September, 2016. These were misrepresentations. The building was not occupiable until March 31, 2017.
>
> .   .   .
>
> The architect and Iron Square Foot represented the same commercial HVAC units would be installed on the new building as Melissa's Gym had at its location on Doniphan. The HVAC units as designed and installed are much smaller and will not adequately heat and cool the new building.
>
> They allowed residential units with small motors to be installed. There are no seasonal dampers.
>
> There is no adequate reinforcement where penetrations were made. They must be replaced or supplemented with large effective units. Until then, utility bills will greatly increase.
>
> .   .   .
>
> Architect Asfahani misrepresented he would periodically observe the construction and review the applications for payment. He misrepresented where the fire hydrant would be placed and then it was eliminated. Striping of the parking lot was not done. A bike rack was not installed as promised. Rain gutters appear to be of a

material that will easily rust out. Asfahani misrepresented that cost of services regarding an expansion of the square footage.

The negligence and deception of Asfahani is further detailed in the Affidavit of Jeffrey J. Huff attached hereto.

Appellees' live petition also alleges that "[a]t all times, Rida Asfahani/Root Architects, PC was the Project Architect"; "Rida Asfahani acted individually and/or a[s] the sole agent and member of Root Architects, PC"; "Root Architects, PC was the alter ego of Rida Asfahani and Root Architects, PC is a sham and operated to perpetuate a fraud against the Plaintiffs"; and that the "negligence, deception, misrepresentations and fraud of Rida Asfahani d/b/a Root Architects and/or Root Architects, PC is more fully set forth in the Certificate of Merit." Appellees specifically asserted their claims against Root Architects under theories of agency, piercing the corporate veil, and joint and several liability of Asfahani and Root Architects. Because Appellees' claims against Asfahani and Root Architects are predicated on the same articulated professional errors and omissions, the certificate of merit was sufficient and did not need to be specific to Root Architects. *See M-E Eng'rs*, 365 S.W.3d at 507.

We conclude the trial court did not abuse its discretion by denying Appellants' motion to dismiss based on the certificate of merit's sufficiency under § 150.002. Appellants' sole issue on appeal is overruled.[4]

---

[4] Appellees argue that Appellants waived any complaint regarding the sufficiency of the certificate of merit under § 150.002 because Appellants waited too long to seek dismissal and engaged in substantial litigation. Because we conclude the trial court did not abuse its discretion in denying Appellants' motion to dismiss, we do not reach the issue of waiver. *Atwell, LLC v. DCP Operating Co.*, No. 08-23-00029-CV, 2024 WL 308533, at *7 n.5 (Tex. App.—El Paso Jan. 26, 2024, no pet.) (declining to address waiver issue because it concluded that the trial court did not abuse its discretion in denying dismissal motion on § 150.002 grounds).

## IV. CONCLUSION

We affirm. We further order the stay imposed by our September 3, 2025 order lifted.

MARIA SALAS MENDOZA, Chief Justice

June 30, 2026

Before Salas Mendoza, C.J., Palafox, J., and Rodriguez, C.J. (Ret.)
Rodriguez, C.J. (Ret.), sitting by assignment